IN RE TREPP'S ESTATE. BARCLAY, APPELLANT, *v.* TREPP, RESPONDENT.

(*No. 5,504.*)

(Submitted June 17, 1924. Decided July 8, 1924.)

[227 Pac. 1005.]

*Probate Homesteads—Selection—Value and Extent—Statutes —Wills—Family Allowance—When Improper.*

Probate Homestead—Value and Extent—Statutes.
    1. The homestead authorized to be selected by the probate court under section 10145, Revised Codes of 1921, where none was selected prior to the death of decedent, is the homestead provided for by sections 6945-6948, and therefore the value and extent of it must not be any greater than as prescribed by those sections.

Statutory Construction—Meaning of Words—Rule.
    2. Where a word (or phrase) is defined in the Codes, the same meaning must be given it, under section 8776, wherever it occurs, unless it plainly appears that it was the legislative intention to attach to it a different meaning.

Probate Homestead—Selection—Mode of Procedure.
    3. In selecting a homestead for the family of a decedent where none was selected prior to his death, the probate court may, in the absence of a mode of procedure prescribed by the statute, proceed in substantially the manner indicated by section 6971 *et seq.*, Revised Codes of 1921, for its selection during the lifetime

[71 Mont. 154.]

of a decedent, thereafter following the procedure outlined by sections 10152–10157.

Same—Widow not Precluded from Claiming Homestead by Taking Under Will.
    4. Where decedent by will left his entire property in equal shares to his widow and a daughter by a former marriage, and the instrument did not show that any of it was devised or bequeathed to the former, in lieu of her homestead right, she was not precluded from claiming a probate homestead by taking under the will.

Estates of Deceased Persons—Family Allowance—When Improper.
    5. Where at the time a petition for family allowance was filed the estate was and had been for some time ready to be closed and a reasonable time had elapsed for the settlement of its affairs, the court abused its discretion in granting the petition.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

PETITION by Kathrina Trepp, widow of Michael Trepp, deceased, to set aside a homestead and for family allowance. From the order granting the requests, Mary A. Barclay appeals. Reversed and remanded.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellant, submitted a brief and one in reply to that of respondent; *Mr. H. Leonard De Kalb* argued the cause orally.

We contend that a homestead in excess of $2,500 in value or exceeding in area one-fourth of an acre (if in a city or town) cannot be set aside to a widow. If no homestead has been carved out by decedent the court must carve out a "homestead"—meaning what? Undoubtedly it means a homestead as defined by section 6968, Revised Codes of 1921. This is a rational and natural construction. To so construe the statute is to conform to established principles of statutory construction. Section 8776 provides: "Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." Likewise the rule is stated in 36 Cyc. 1132, as follows: "Where

4. Rights of widow under homestead and exemption laws, see notes in 4 L. R. A. (n. s.) 391; L. R. A. 1917C, 365.

the same word or phrase is used in different parts of a statute it will be presumed to be used in the same sense throughout." (See, also, "7 Construction with reference to other laws." 36 Cyc. 1144; also note 84, 36 Cyc. 1143; *State* v. *District Court,* 51 Mont. 305, 152 Pac. 745.) Where it is important, this method has been resorted to by the courts. Thus, in *Eaton* v. *Robbins,* 29 Minn. 327, 13 N. W. 143, the court had occasion to construe a probate statute, employing the word "homestead," and said: "We think the term 'Homestead,' in the second section, was not used merely as a convenient designation of a certain portion of the estate in which the survivor was to take a freehold, but *eo nomine* as created and defined in the homestead exemption act." (See, also, *White* v. *Spencer,* 217 Mo. 242, 16 Ann. Cas. 598, 129 Am. St. Rep. 547, 117 S. W. 20; *Jones* v. *Losekamp,* 19 Wyo. 83, 114 Pac. 673; *In re McVay's Estate,* 14 Idaho, 56, 93 Pac. 28.)

It will be contended by counsel that the California court has construed the section now up for consideration differently than we contend. At the time the case of *In re Walkerly's Estate,* 81 Cal. 579, 22 Pac. 888, the first of the five cases cited by respondent, was decided, the California court had already expressed itself five times on the subject, in harmony with our contention in the following cases: *Estate of Burns,* 54 Cal. 223; *Kearney* v. *Kearney,* 72 Cal. 591, 15 Pac. 769; *Estate of Noah,* 73 Cal. 590, 2 Am. St. Rep. 834, 15 Pac. 290; *Kingsley* v. *Kingsley,* 39 Cal. 665. These cases, the court in the *Walkerly Case,* holds, simply express *obiter dictum* on the subject; but the analysis is by no means convincing. In ignoring the provisions in the matter of area and value the decisions cited we respectfully submit are unsound and should not be followed.

We think it clearly appears from the terms of the will that there has been an election to take under its terms. If it does clearly appear from the will that it was the intention of the testator, although not so expressly stipulated, that she take

under the will or renounce, she cannot avail herself of the benefits of both the will and her statutory rights were there no will. (29 C. J. 909, sec. 483; *Etcheborne* v. *Auzerais,* 45 Cal. 121.) We refer the court further to *Manning* v. *Wilson,* 52 Ind. App. 1, 100 N. E. 106, and to 28 R. C. L. 331. The mere fact that the terms of the will are inconsistent with any other thought than that an election must be made seemed sufficient to the court in *Hazlett* v. *Farthing,* 94 Ky. 421, 42 Am. St. Rep. 365, 22 S. W. 646, to put the widow upon her election. (See, also, 13 Cal. Jur. 512, 513 and 521.)

Family allowance: See *In re Dougherty's Estate,* 34 Mont. 336, 86 Pac. 38, 12 Cal. Jur. 167.

*Mr. Wm. M. Blackford,* for Respondent, submitted a brief and argued the cause orally.

It will be seen, on examination of our section 10145, Revised Codes of 1921, that there is no limitation of value or area of a probate homestead. The value and extent of the home to be selected as the probate homestead is lodged in the discretion of the court, which will not be interfered with unless it appears that such discretion has been abused. (*In re Walkerly,* 81 Cal. 579, 22 Pac. 888; *In re Schmidt's Estate,* 94 Cal. 334, 29 Pac. 714; *In re Estate of Smith,* 99 Cal. 449, 34 Pac. 77; *In re Estate of Adams,* 128 Cal. 380, 57 Pac. 569, 60 Pac. 965; *In re Estate of Levy,* 141 Cal. 646, 99 Am. St. Rep. 92, 75 Pac. 301.)

Counsel for appellant take the same view upon this question that the lower court did in California in *Sulzberger* v. *Sulzberger,* 50 Cal. 385, where the homestead was disallowed to the widow as the property had been disposed of by will of the deceased. Its holding was reversed. (See, also, *In re Davis,* 69 Cal. 458, 10 Pac. 671; *Estate of Huelsman,* 127 Cal. 275, 59 Pac. 776; *Estate of Firth,* 145 Cal. 236, 78 Pac. 643; *Estate of Kennedy,* 157 Cal. 517, 29 L. R. A. (n. s.) 428, 108 Pac. 280; *Estate of Levy,* 141 Cal. 646, 99 Am. St. Rep. 92, 75 Pac. 301.)

The estate in this case is entirely solvent, and the only limit to the right of a widow to a family allowance is the arrival of the time at which the estate may be settled. (*In re Dougherty's Estate*, 34 Mont. 336, 86 Pac. 38.) It cannot be urged here, as it was in that estate, that this widow has in the least contributed to the delay in the settlement of this estate in order that she might consume its substance by means of any allowance, for she had not any allowance before the order from which this appeal is taken. Who and what contributed to her support before the record does not disclose, but it was clearly within the discretion of the court to make the allowance under all the circumstances. In *In re Phillips' Estate*, 18 Mont. 311, 45 Pac. 222, this court held a widow is entitled as a matter of right to a reasonable allowance during the progress of the settlement of the estate, and her financial ability to support herself without such aid is immaterial in determining her right to such allowance. Same holding: *Griesemer* v. *Boyer*, 13 Wash. 171, 43 Pac. 17; see, also, *In re Lux Estate*, 100 Cal. 606, 35 Pac. 345, 639; *In re Estate of Fretwell*, 154 Cal. 638, 98 Pac. 1058; *In re Welch's Estate*, 106 Cal. 427, 39 Pac. 805; *Lisk* v. *Lisk*, 155 Mass. 153, 29 N. E. 375; *Bacon* v. *Probate Judge*, 100 Mich. 183, 58 N. W. 835.

HONORABLE S. D. McKINNON, District Judge, sitting in place of MR. JUSTICE COOPER, disqualified, delivered the opinion of the court.

Michael Trepp died testate on the thirtieth day of March, 1921, leaving an estate in Fergus county, Montana. He devised and bequeathed all of his property, except a bequest of $100, to Kathrina Trepp, his widow, the respondent herein, and to Mary A. Barclay, a daughter of a former marriage, the appellant herein, in equal shares. The widow and daughter were named as executrices and letters testamentary were issued to them on June 6, 1921, and ever since that date they have been the duly qualified and acting executrices of the last will of the deceased. The estate was appraised at $41,640.

Notice to creditors was duly published and no claims were presented within the time provided for by law, except one, which has been paid.

Prior to the death of the decedent, he and his wife, Kathrina Trepp, resided in Lewistown, Montana, and occupied a dwelling-house situate on a tract of land seventy-five by 200 feet in dimensions. This property belongs to the estate, and was appraised, as shown by the inventory, at $5,600.

During the lifetime of decedent no homestead was selected as provided for by law, and on the thirtieth day of April, 1923, the widow filed a petition asking the court to select and set aside the aforesaid dwelling-house and appurtenances as a homestead for her use and benefit, also to set aside the personal property exempt from execution, and for a family allowance of $100 per month. A protest was filed by the daughter against the granting of the petition. The petition and protest were heard on May 15, 1923, and thereafter and on December 8, 1923, the petition was granted *in toto*, except that the family allowance was fixed at $75 per month, to take effect from the date of death of the decedent.

The record further discloses that at the time of filing the aforesaid petition the estate was solvent and ready to be closed, but no final account and petition for distribution had been filed. The record is also clear that the homestead selected and set aside by the court was of a reasonable value in excess of $2,500.

This appeal is taken from the order setting aside the homestead and also from the order granting the family allowance.

There are three questions for determination, *viz.*: (1) Is there any limit to the value and extent of a homestead that may be set apart to the family of decedent, where none was selected prior to death? (2) Is the family of a decedent precluded from a probate homestead by taking under a will? and (3) Was it proper to grant the family allowance?

1. A homestead was unknown at common law. It exists only [1] by virtue of the laws of the several states. (Andrews

on American Law, p. 986.)    Therefore, in order to determine
what a homestead consists of in this state, it is necessary for
us to analyze our statutes.

The general definition of a homestead is set forth in section
6945, Revised Codes of 1921, as follows: "The homestead con-
sists of the dwelling-house in which the claimant resides, and
the land on which the same is situated, selected as in this
Chapter provided." This definition, however, is limited by
section 6968, and, so far as applicable here, is: "A quantity
of land not exceeding in amount one-fourth of an acre, being
within a town plot, city or village, and the dwelling-house
thereon and its appurtenances. Such homestead  *  *  *
shall not exceed in value the sum of two thousand five hundred
dollars."    (See *Yerrick* v. *Higgins,* 22 Mont. 502–506, 57 Pac.
95, 96.)

The respondent herein requested the court to set aside a
homestead for her use and benefit under section 10145, Re-
vised Codes of 1921, which provides: "Upon the return of the
inventory, or any subsequent time during the administration,
the court or judge may, on its own motion, or on petition
therefor, set apart for the use of the surviving husband or
wife, or in case of his or her death, to the minor children of
the decedent, all the property exempt from execution, includ-
ing the homestead selected, designated, and recorded; if no
homestead has been selected, designated, and recorded, the
court or judge must select, designate, and set apart, and cause
to be recorded, a homestead for the use of the surviving hus-
band or wife and the minor children; or if there be no surviv-
ing husband or wife, then for the use of the minor children,
in the manner provided for in sections 10151 to 10157 of this
Code, out of the real estate belonging to the decedent."

It will be observed from the above provision that if no home-
stead was selected during the lifetime of a decedent the court
must set one aside in the manner provided for in sections
10151 to 10157, Revised Codes of 1921.    Section 10152 relates
to a homestead selected and recorded prior to the death of a

decedent which does not exceed the appraised value of $2,500. In this instance it becomes the duty of the court to set the homestead off to the persons entitled thereto. Section 10153 specifies that appraisers shall determine the value of the homestead, as selected and recorded, at the time the same was selected, and the steps to be taken by them if in excess of $2,500, and it also authorizes the court to order a sale of the premises in case the value exceeds that sum. Section 10154 relates to the report of the appraisers, and section 10155 is in regard to the hearing on the report and the confirmation thereof. Section 10157 provides for the filing of the order confirming the report setting aside property or the sale thereof, and requires that it shall be recorded in the office of the county clerk and recorder.

It is earnestly contended on behalf of the respondent that there is no limit to the value and extent of a probate homestead. It is said that the statute justifies such an interpretation by reason of the wording of section 10145, *supra,* which does not in itself limit the extent and value of the homestead, and also by reason of the fact that the procedure set forth in sections 10151 to 10157, mentioned *supra,* relates only to homesteads selected and recorded prior to death. Counsel bases his argument upon the above-mentioned statutes and cites numerous California decisions, among which are *In re Walkerly,* 81 Cal. 579, 22 Pac. 888; *In re Schmidt's Estate,* 94 Cal. 334, 29 Pac. 714; *Smith* v. *Smith,* 99 Cal. 449, 34 Pac. 77; *In re Adams' Estate,* 128 Cal. 380, 57 Pac. 569, 60 Pac. 965. These cases at first blush seem to support the views contended for by counsel for respondent, but upon an analysis of them we do not think they are applicable.

It is true that the section of our Code providing for the selection of a probate homestead was adopted from California (*Yerrick* v. *Higgins,* 22 Mont. 507, 57 Pac. 95), but when it was adopted by us it became subject to any other statutes enacted pertaining thereto. We are unable to find that at the [2] time any of the decisions in California were rendered

that state had a provision similar to our section 8776, Revised Codes of 1921. This section provides: "Whenever the meaning of a word or phrase is defined in any part of this Code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." (See 36 Cyc. 1132; *State ex rel. Bitter Root Valley Irr. Co.* v. *District Court,* 51 Mont. 305, 152 Pac. 745.)

This statute, we believe, must be taken into consideration in determining what a homestead means under section 10145, *supra.* It is applicable and should be given effect. (Sec. 10519, Rev. Codes 1921.) And when considered in connection with section 10145, there is no other conclusion to come to than that the legislature clearly intended that a probate homestead which is to be set apart by a court, where none was selected prior to death, is a homestead as defined by the laws of the state; that is to say, as defined by sections 6945 and 6968, *supra.* We are fortified in this conclusion by an examination of the title of section 10145. It provides only that all property exempt from execution shall be set apart for the use of the family. The title is indicative of the legislative intent. In *McLaughlin* v. *Bardsen,* 50 Mont. 177, 186, 145 Pac. 954, 955, it is said: "The arrangement and classification of statutes, their titles and headnotes, are all proper and available means by which to determine legislative intent."

The homestead that is exempt during the lifetime of a decedent is the homestead defined by law, and we think that a homestead that is exempt under the probate statute where none was selected previous to death is of the same character.

It is not clear from the statute what mode of procedure is [3] to be followed by a court in selecting a homestead where none was selected prior to death. But nevertheless it is clear that the court has jurisdiction to make the selection, and under the circumstances the court is authorized (sec. 8882, Rev. Codes 1921) to adopt a suitable procedure in keeping with the spirit of the statute. This may be done by the court selecting a homestead in substantially the same manner as a home-

stead is selected during the lifetime of a decedent (secs. 6971 et seq.; *Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 549, 81 Pac. 334), and, after the selection has been made, following the procedure substantially as set forth in sections 10152 to 10157, inclusive. When selected, the homestead should be included in the inventory and the same steps taken as if it had been selected prior to death. This is in keeping with the intent of the legislature, as we do not believe that it was ever intended to give a probate court any greater authority in the selection of a homestead than a decedent had in his lifetime.

2. But appellant contends that the respondent is precluded [4] from claiming a probate homestead by electing to take under the will. This argument is not tenable. The express language of section 10145, *supra*, refutes it. Then again, the rights of the respondent under this will are the same as under the laws of succession. Even the will does not clearly show that any property was devised or bequeathed in lieu of the homestead rights. (*Sulzberger* v. *Sulzberger*, 50 Cal. 385; *Estate of Huelsman*, 127 Cal. 275, 59 Pac. 776.)

3. It appears that at the time of filing the petition for [5] family allowance the estate was ready to be closed. All claims had been paid and the time for the filing thereof had expired. It had been in the course of administration for nearly two years. In fact, nothing appears why the estate should not have been closed sooner. We think the court abused its discretion in granting an allowance under the circumstances. The statute makes provision for the maintenance of a family during the progress of the settlement of the estate, and the court is given discretion, in making the allowance, to order the same to take effect from the death of decedent. (Secs. 10144, 10146 and 10147, Rev. Codes 1921.) These provisions do not contemplate an allowance to be made beyond the time reasonably necessary for the closing of an estate. However, there may be circumstances arising in an estate which would warrant an allowance such as made herein, but we do not believe that they exist here. The argument that

this homestead application is pending and that the estate therefore could not be closed is not tenable. The petition undoubtedly could have been heard at a much earlier date. Of course, there can be no fixed rule governing the granting of a family allowance. Each case must depend upon its own facts. But, where it clearly appears that an estate is ready to be closed and a reasonable time has elapsed for settlement of its affairs, we believe that a court abuses its discretion in granting a family allowance. The language used in *Re Dougherty's Estate*, 34 Mont. 336, 343, 86 Pac. 38, 41, is applicable here. The court says: "The policy of the law is that the affairs of estates shall be settled and the assets distributed as speedily as possible. The expression 'during the progress of the settlement of the estate,' then, must be construed to mean during the time reasonably necessary for that purpose. If so, the order, though regarded as a judgment, fixing a lien upon the assets of the estate, must be presumed to have been satisfied when the time shall have arrived at which the estate may be settled; else the administrator may delay action until the whole estate is consumed and nothing left to those who are entitled to a distributive share in its assets."

The order setting aside the homestead and the order granting the family allowance are reversed, and the cause is remanded, with instructions to the district court to set aside a homestead for the use of the respondent herein in conformity with the views herein mentioned.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.