[Civ. No. 21229.   Second Dist., Div. Two.   Nov. 18, 1955.]

Estate of LEE ROY RAYMOND, Deceased.   WILLIAM L. RAYMOND et al., as Executors, etc., Appellants, v. SOLEDAD RAYMOND, Respondent.

*Assigned by Chairman of Judicial Council.

Eugene Kelly for Appellants.

Tobias G. Klinger and Paul Fitting for Respondent.

MOORE, P. J.—The executors of the estate of Lee Roy Raymond appeal from an order setting apart a probate homestead for petitioner, Mrs. Soledad Raymond, widow of decedent, out of decedent's separate property. They contend that it was error to select such homestead when there was suitable, residential property owned by petitioner and decedent as tenants in common.

Decedent had been married to petitioner for 17 years. He had had a former wife with whom he had reared his family in the home on El Molino Street in Alhambra. When he married petitioner, he took her to live in the same residence. Decedent left an estate appraised at $203,887.17. One asset of the estate is an undivided one-half interest in a court consisting of 10 three-room apartments. The property consists of three buildings. Two of the buildings are one-story frame construction. They occupy the sides of the lot; each has four apartments. The third building is at the rear. It contains garages for all the apartments on the ground. Over

them are two other apartments, each of which has a bedroom, bathroom, combination kitchen, dinette and living room. Petitioner was the cotenant with decedent in the ownership of such court. The El Molino property has a two-room apartment carved out of the home, but it is under the same roof.

In selecting a probate homestead, the probate court has wide discretion and its order will not be disturbed unless there has been an abuse of such discretion. (*In re Walkerly,* 81 Cal. 579, 583 [22 P. 888].) The court will give the family "a homestead of as great a value" as possible considering the amount and condition of the estate. (*Ibid.*)

It is the court's duty to provide a place "for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence or from the importunity of their creditors." (*Estate of Kachigian,* 20 Cal.2d 787, 791 [128 P.2d 865].) There is no absolute rule to control the court in the selection of a homestead. But while it must be governed by a sound discretion, yet it must consider the value of the homestead, the estate's financial status and the rights of creditors. (*Estate of Claussenius,* 96 Cal. App.2d 600, 611 [216 P.2d 485].) The statute (Prob. Code, § 661) governing the selection of homesteads suggests no variation from the foregoing rule. It requires the probate court to designate and set apart a homestead for the use of the surviving spouse (1) out of the community property, (2) out of real property owned in common by decedent and his wife, or (3) if there be neither community property nor property so owned in common, then out of the separate property of decedent. If selected for the widow from the separate property of decedent, the order must prescribe a limited period for such homestead not to exceed the lifetime of the widow. Such provision is a part of the order herein.

That the court acted with a sound discretion and within the purview of section 661, *supra,* appears from a glimpse at the facts shown by the record. There was no community property appropriate for petitioner's homestead. Neither does the bungalow court owned by decedent and his wife as tenants in common fill the requirements for a woman who had been decedent's wife for 17½ years and with him had during that period occupied the El Molino home. It is a seven-room, two-story frame house, worth only $11,000 including a three-room apartment which is a part of the build-

ing "constructed by blocking off a doorway to some existing room." If it was an appropriate residence for petitioner when she was, almost two decades previously, carried over its threshold to abide there with her husband, should she today be driven from it, now that he is gone and she is left with her memories? No good reason appears why she should be penalized by being forced from the shelter provided by her husband and driven to a humbler abode merely because she owns a half interest in the court. The fact that the El Molino home was occupied by decedent and petitioner in his lifetime and could have been declared a homestead by decedent is a fair test of the appropriateness of its selection for petitioner. (*Estate of Levy*, 141 Cal. 646, 649 [75 P. 301, 99 Am.St.Rep. 92].) To compel her to go from her established seven-room residence and live in a three-room apartment would be to deprive her of an economic status established for her by her husband, reduce her enthusiasm and diminish her power for service to her community. Decedent never lived in the court although his half interest was worth $18,300.

Moreover, the estate does not need the El Molino property. Its assets exceed $185,000 besides the home and no indebtedness is suggested by the executors.

Whether petitioner should be awarded a court building instead of one of its apartments as a homestead is not germane. She was awarded the El Molino property and that shall be her home.

Order affirmed.

McComb, J., and Fox, J., concurred.